Thank you again, Your Honor, and may it please the Court. In this case, I think it's important to focus upon the district court's basis for dismissal, which is Rule 12b-1, Subject Matter Jurisdiction. As a matter of law, that was simply erroneous. Federal courts always have jurisdiction to enforce their judgment. They have federal question jurisdiction. That's under the Semtec decision of the Supreme Court and the Duffy decision of the Fifth Circuit, which we cited in our brief. There's also ancillary jurisdiction. And both the district court and Everest have effectively acknowledged this. This is found at Excerpts of Record 393. It says, No independent basis of jurisdiction is required for a federal court to entertain an application to enjoin relitigation in state court. That's a quote from the district court. At page 1 of Everest's brief, they say, The district court had ancillary jurisdiction under this case under the All Writs Act. So the question then becomes, does the Anti-Injunction Act destroy the district court's jurisdiction? But we can't, under Supermail Cargo v. United States, can't we construe a 12b-1 argument as a 12b-6 argument? Not without notice, Your Honor. And the standards are quite different. Now, what are the standards for that? What's your case law authority? Where there is conversion, the district court has to treat it like, essentially like a summary judgment ruling, drawing all inferences in favor of the non-movement. And your authority for that is? There's the, this is discussed at page 13 of our reply brief. The Everest's own authority, Ratana, the Ninth Circuit case from 1972, makes clear that the obstacles to treating a 12b-1 ruling as a 12b-6 ruling are formidable. And I think that was a case in which the Ninth Circuit refused to affirm on 12b-6 grounds, despite even some indications that that's what the district court had intended. So your reading of Ratana, rather, is that you can convert, but there's a high barrier, and the barrier is what? Well, I think there would have to be a clear indication that that's, there was some intention to that. But you'd also have to satisfy the substantive standard for 12b-6 and would involve, you'd decide that, of course, drawing all inferences in Prometheus's favor here. Here, of course, the ultimate issue is whether there's allegations of privity. Right. And it's very clear that that's alleged in the complaint. If you look at paragraph 28 of the complaint, found on page 7 of the excerpts of record, you'll see that we have clearly alleged privity between Everest and the nominal plaintiffs in the Federal class action. And it goes on to explain the grounds for that. These allegations should have been taken as true. They were not. And the reason that the district court didn't do that, he effectively ruled that there was no privity as a matter of law based solely on the fact that Everest was not named as a plaintiff in Peretta. And we would suggest that that's confusing the issue of the identity of plaintiffs with the issue of privity. By the way, how much time would you like to reserve, Mr. Johnson? I was told that 5 minutes was the standard, and that's fine. We like to please. Whatever you'd like. Let's go with 5 minutes. 5 minutes it is. Go ahead. So in any case, identity of parties, obviously, and privity of parties are not the same thing. Several factors can establish privity. Under this Court's cases, it's a flexible concept. The key is essentially whether there's a sufficient commonality of interest between the parties or some evidence of control of one group over the other. And that's the Tahoe-Sierra Preservation case and the Schimels case that we've cited in our briefs. We alleged facts supporting both theories. The Everest lawyers threatened the Federal lawsuit while the State law action was pending. They then, in fact, filed the Peretta lawsuit alleging similar facts. They used the Peretta action for their own purposes in the State court action in terms of seeking settlement and settlement leverage. And Everest acted as the assignee of other limited partners. The district court did not even consider these relationships. He simply just said identity of parties is different, end of story. Before we get to that, I appreciate your argument here, but before we get there, let me be sure that we're on the same page as far as the timing and where everything is in this thing. You're asking that the Court enjoin what at this point? The State action has been completed, right? Not as to Stanford Dillard. Okay. The trial was severed in State court. Right. So there's no, can be no claim of mootness. Okay. So the whole basis of this is Stanford Dillard. So if Dillard is, again, argument, if Dillard's not part of the lawsuit, this action fails, right? I think there would be a mootness issue at that point, Your Honor. Okay. All right. And when, as I understand it, the district court decision was handed down before the State court decision, is that right? Like the same day or something like that? The superior court's decision, not the tentative decision in September, yes, was issued on the same date, February 24th, 2006, as Judge Alsup's ruling in the Peretta, on the Peretta complaint that we discussed in the last appeal. Yes, they were decided on the same date. Okay. Go ahead. I don't mean to interrupt you. Just wanted to be sure we were on the same page on that. So in any case, it seems to me that it was clearly a legal error and supports reversal for Judge Alsup to have said, on the basis of Rule 12b-1, first of all, that there was no jurisdiction to enforce his earlier judgment, and then to rely on the Anti-Injunction Act as a basis for saying that. This Court's decision in Gamble, which is 846F2-51, says that the AIA is not a jurisdictional statute. The Supreme Court's decision in the Smith case in 1924, that's 264 U.S. 274, says the AIA, quote, merely limits the district court's general equity powers. So obviously there's an issue of the scope of injunctive relief that's available under the relitigation exception in any case, but it's not a jurisdictional issue. What's your take on the Sandpiper Village case and the issue of comedy? Here we've got the State court action. This has essentially been litigated with the exception with respect to Mr. Diller. What would we be enjoining? Two thoughts, Your Honor. First of all, there was no showing of privity in Sandpiper Village. And here we've got allegations, that's all, but there are allegations and they need to be taken as true. Second of all, it seems to me that comedy is a bit of a — doesn't fit in this context. It would spell it differently. Say again? It would spell comedy differently. I would spell it differently? Yes. C-O-M-E-D-Y. Oh. Right. Well, there might be that aspect of the case as well, Your Honor. But comedy with a T, I would say, is sort of — just doesn't fit the facts of this case. There's a vehicle for arguing principles of comedy, and that's called abstention doctrine. There's been no suggestion of that here. There's been no raising of it here. I could speculate about why that is, but I don't need to. The fact of the matter is that it's never been pressed, and it would be inappropriate, I think, to use that as a basis for prohibiting this case from going forward on the basis. Is this another way of arguing the collateral estoppel case? I'm not sure exactly what you mean by another way of arguing the collateral estoppel case, Your Honor. Basically, depending on which side you look at this, one of you tried to stop the state action. There are two different ways of doing it. One is the injunction. One is arguing that this action can't go forward because you're collaterally estopped. Is that right? There's an aspect of that in both cases. See, technically, this would be more an issue of res judicata, because we're dealing with a final judgment, and that's complete. It would be, you know, the issue of claim as opposed to issue preclusion. But obviously, there's dueling arguments on that issue. As we noted in our opposition to the motion to file supplemental briefs, in both cases, you know, if the Court's inclined to look at that, we'd be happy to brief it. If you want to discuss it, we can discuss it on the merits as well. But it seems to me that you don't need to be concerned with that on this record. Okay. In light of the clear error in terms of treating this as a 12b-1 dismissal when the AIA is not a jurisdictional statute, and the failure to take the allegations as true and or to allow discovery on that issue, it seems to us that those are grounds that are sufficient in themselves for reversal. If there are other questions that the Court has, I'm happy to answer them. Otherwise, I'll just reserve the remainder of my time for rebuttal. It appears there are no questions at this time, so we thank you, Mr. Johnson. We'll hear again from Mr. Adelstein. Good morning once again, Your Honors. Good morning. The trial judge in this case got it right, unlike Preda. The simplest way for this Court to affirm, actually, would be to decide the Preda case and reverse that, in which case the judgment fails. The second way, which I'll just say. Wait. Now, you said if we were to reverse in the case we just heard. Right. Then that would return that case, I think, down to the district court. Correct. Correct? And you say that would then end the present case that you're now arguing? Correct. There would be no judgment for Judge Alsop to be enforcing. Trying to protect? Correct. And so the whole thing would be moved. The second easy way. What would you do in the case you would then be presenting your collateral estoppel arguments to the district court in that case? Is that correct? In Preda? We would be. Also Preda. No. No, this is Everest. Okay. Right. We have a hard time keeping them all apart as well. So you then present your collateral estoppel arguments? In Preda. In Preda. We would. And failing that, we would go ahead and try the case and just litigate and file motions and all of that stuff. The second way, and I note this simply to note it, is that this issue was raised in the State court action. The State court ruled against Preda, Promethea, sorry, on their collateral estoppel argument. There was privity in collateral estoppel applies. And ironically, their collateral estoppel argument is now itself barred by collateral estoppel or issue preclusion. And that is the subject of our supplemental brief, and I simply note it here, but we'll not go into it unless the Court has any questions. There's multiple grounds on which the trial court's, the district court's ruling can be affirmed. Several, two were mentioned by the district court, two are proper as a matter of law and that this Court can decide as well. But let me just note the fundamental problem here, and I think, Judge Smith, you mentioned this, you touched on this. There's two things that a plaintiff can do if there are parallel, or a defendant can do if there are parallel Federal and State actions. The plaintiff can, the defendant can either file an anti-injunction act in Federal court or can simply go into State court and ask to apply claim preclusion or issue preclusion, whatever it deems appropriate. And the cases are clear that that's the preferable approach. It's only if there's some unusual circumstances where the Federal court's judgment is in danger of being interfered with in some way or it needs to protect its jurisdiction or the effectiveness of its judgment that it requires an actual injunction to enjoin an ongoing State court action. If it's an ordinary in personam action, and this case is, we have one set of plaintiffs suing in State court, one set of plaintiffs suing in Federal court, the prop, the preferred way of dealing with this is simply to let each case go forward and let each court apply issue preclusion as appropriate or inappropriate, and not to have Federal courts overreaching and trying to enjoin ongoing State proceedings. That's the idea of the anti-injunction act. It's really, and is it not, basically, to, in fact, protect the, if you will, the integrity, the authority of the district court in this case, in the Federal system? It's less to protect the parties than it is to protect the court, right? That's right. And Judge Alsup, who was, after all, the judge in Peretta, didn't think that its judgment needed protection. It simply dismissed, he simply dismissed the case, the Peretta case, and that was over as far as he was concerned. Whatever happened in State court was fine. We could win. We could lose. They could apply collateral estoppel. They could not apply collateral estoppel. Nothing would affect the effectiveness of his judgment. And so he reasonably concluded that there was no need for this. The first point that he, that he, that Judge Alsup relied on was, was the privity point. And this is not merely a general allocation of privity, but the specific reason for thinking there was privity is two things. One is the Everest's purported threats in the State court action, putting aside the issue that these were all privileged as occurring in settlement discussions. And the second is the fact that there were the same lawyers involved. But the law is clear that that is insufficient to establish privity. Privity occurs if there has been a representation of one party by another in a case or if the other case has exercised control and participation in the second lawsuit. If Everest was pulling the strings, was telling us lawyers what to do, so in order to gain an advantage in the other lawsuit, or if somehow this lawsuit would benefit Everest, if Everest's agents or assinees were suing in this case, then there could be privity. But the State court action, putting aside the issue that these were all privileged as occurring in settlement discussions. Metro Industries suggests that having the same law firm is a factor but not a conclusive factor. Would you agree that that is the state of the law in the Ninth Circuit? Yes. It's one factor that a court can consider, but it's insufficient by itself. Because it – the reason that it's a factor, if you think about it, is it is indicative of control and participation if the law firm is sort of supplying the same lawyers. But here, Everest is not supplying the same lawyers. We are separately representing each set of parties. And as far as the threats go, there's a difference between a warning and a threat. A real consequence of taking the Everest case to trial in State court and losing, Everest pointed out to the defendants, was that it could arguably be used as collateral estoppel in a subsequent lawsuit. It doesn't – that doesn't establish privity. That's a realistic assessment of the risks of going to trial and losing. That is an insufficient ground for establishing – establishing privity. So here we have specific allegations of the basis of privity, and Judge Alsop correctly ruled that they were insufficient as a matter of law. His second ground, which you mentioned, Judge Smith, the comedy point in Sandpiper Village, it – there would – there's simply no reason, and Judge Alsop recognized it, for the Federal court here to – to enjoin an ongoing State proceeding that essentially was completed, it was tried. And what the cases hold is that sometimes cases, State court cases, have simply gone too far to – to enjoin, and there's no reason to do so. And – and that – that was part of the analysis that informed this. This case had been tried. A tentative ruling had been entered. The judgment was almost final, or it was almost entered. And there was no reason to enjoin it. The third reason not mentioned by Judge Alsop, but is – is established as a matter of law, is that there was no interference, which is a requirement for issuing an injunction. No interference with the Federal court's jurisdiction or its judgment. As Judge Alsop correctly recognized, there were simply two parallel proceedings. And each court could apply or not apply collateral estoppel or issue preclusion as it deemed appropriate. There was no need to – to interfere. Now, the cases that have found interference, and we talked about this in our brief, essentially fall into three categories. One is where a Federal class member sues in State court to circumvent rulings in the Federal court. You've got an ongoing class action lawsuit, some unfavorable rulings for the plaintiff class, and then a couple plaintiffs go sue in State court to try and get around that. That's not the case here. Everest and its assinees are – assinores are expressly excluded from the Federal class. The second is if there's an interpretation of a complicated Federal consent decree. And there are a couple cases discussed here. And it makes sense to have the Federal judge who issued that resolve conflicting interpretations. If someone goes and sues in State court and it would affect the effectiveness of the consent decree, the Federal judge can enjoin that ongoing State proceedings. And the third example is vexatious or harassing litigation. People just keep suing. And that's – that's not the case here. Those are the cases and the types of cases that involve interference. But we – we just don't have that here. And finally, the last point is the Pareto case – I'm sorry, the State court case was complete before this action was filed. And in the Merle Norman case and the Ramsden case, it's a Seventh Circuit case, the courts have – the Federal courts have held that once a State court has considered collateral estoppel and rejected it, a Federal court shouldn't then go and join the State court proceedings. That – that would be an abuse of discretion. The State court is perfectly competent, just as competent as the Federal courts, to determine the collusive effects. Now, as far as the jurisdiction argument goes, it looks like what happened is the Federal court decided this – decided that it had ancillary jurisdiction to protect its judgment, but decided – it's not clear from the second part of its opinion when it decided that the Anti-Injunction Act applied as to whether it was determining that it had no jurisdiction or whether it was determining that as a matter of law, the plaintiff couldn't state a cause of action. Regardless of whether or not the – all allegations are deemed true in the complaint and I think the – for the reasons I talked about before, the privity argument can't be deemed true because the specific basis of it are not – are – do not establish privity as a matter of law. It's clear that the court – that the trial court, as a matter of law, recognized that the – that Prometheus could not state a cause of action, regardless of any disputed facts, and so properly dismissed the action on those grounds, properly held that either it didn't have jurisdiction or that the plaintiffs couldn't state a cause of action and the case properly was dismissed. If the Court has no questions. Roberts. I think we have none. Thank you very much, Mr. Adelstein. Mr. Johnson, you have 8 minutes and 23 seconds. Thank you, Your Honor. You don't have to use them all, but you have them. I don't expect to, but I reserve the right to, just in case. I'd like to begin with your observation about the Metro Industries case and the fact that whether parties are represented by the same counsel, while not independently sufficient to establish privity, is a factor in establishing privity. That also follows from the Alvarez decision interpreting the Rogers decision in the California courts. Mr. Johnson, what's your take on Atlantic Coast Line? The Supreme Court said any doubts as to the propriety of a Federal injunction against State court proceedings should be resolved in favor of permitting the State courts to proceed. Under that direction from the Supreme Court, if this is a close case, is there any doubt that the action should not be permitted? I think that that would be relevant for Judge Alsup to consider in an analysis of whether, in his discretion, an injunction should issue. You don't get to that issue in this case because this was a 12b1 jurisdictional dismissal. And the remainder of the arguments that we've heard from my friend representing Everest are all arguments that go to how that discretion should be exercised. They do not respond to the basic point that this was a 12b1 dismissal. Let me take them basically one at a time. He said that a trial has occurred here. First of all, I would reiterate that there's been no trial against Diller because he was severed. And he says that the court should consider whether there's been – whether there would be interference with an ongoing State proceeding. And, again, this, it seems to me, is an issue of how the court should exercise its discretion when considering the relitigation exception under the Anti-Injunction Act, not in determining whether there's jurisdiction. He argued as well that the State court action was complete. Of course, that that was not true when the action was filed. And without getting into all the details of the collateral estoppel versus res judicata issues, I would note that even according to the authorities cited in the supplemental brief of Everest, finality for purposes of collateral estoppel is distinct from finality for purposes of res judicata under California law. As the cases that they cite, I believe it's Bordered Business Park and Sandoval put it, collateral estoppel is less firm than res judicata. And so clearly at the point when this was filed, there was nothing final for purposes of res judicata, although at that date there was some finality. I realize this is the earlier case, but to some degree these are all part of the same agglutinous mass. Speed. Diller seems to be the key to this. If Diller is severed properly and he's out of the case, I think you agree that there's nothing left here. On the other hand, if you go back to the earlier case, since we have counsel, nobody's prejudiced by this, the standard for piercing the corporate veil is pretty high. What is there in the pleadings of admittedly the earlier case, since we didn't get to that, what is there in those pleadings that would meet the standard for piercing the corporate veil? Nothing, Your Honor. The plaintiffs have made no alter ego allegations. They have referred to him being sort of the de facto general partner, but they have not specifically made alter ego allegations, and those, I believe, are what would be required under the California court's decision in REA. So in this case you're kind of on two sides of the same dilemma. If you're correct that there have been no allegations for piercing the corporate veil and therefore the complaint against Diller fails, then you have no cause of action in this case. I'm not sure I followed the question, Your Honor. In other words, if Diller was properly dismissed in the other case, in the trial, and I'm saying now for purposes of 12b-6 that there was no cause of action alleged and he's out for purposes of our discussion, under that circumstance this case would become moot, would it not? There would... Doesn't Diller have to be involved in this case in order for this anti-injunction action to make any impact, have any impact? Yeah, but he is still a defendant in state. I understand that, but I'm just saying if... The file was separate. We're, you know, we have the luxury as a court of appeal to be able to think about a lot of cases at one time. And in this case, if we've got this earlier action, we're going to have to decide whether he was properly dismissed, right? Correct. If you assume, just arguendo, that he was properly dismissed, do you agree that this case goes away? If he was, you mean if he reversed in the first case? No, no, no. Well, yeah, I guess you'd have to assume that part, too. If you assume that we reversed the first case but he's out, does this case become moot? It certainly would look very, very different. I'm not technically sure whether it would become moot, but I mean, I think it might. Okay. I mean, if you affirm, of course, that case, then that's what I was confused about. I wasn't sure what you meant. I should have said that, too. You would feel better about that if I put it that way, so. Indeed. Excuse me, counsel. I have one question. You indicated that this was decided on a 12b-1 motion, but it should have been a 12b-6 motion. Well, it's inappropriate to rely on the Anti-Injunction Act as a basis for relief without relying on 12b-6. And you would have been entitled to notice for the 12b-6? Yes, we would have been entitled to notice the 12b-6, and the standard of review, of course, would be different. And this was decided on the pleadings? How were you prejudiced by the fact that it was decided as a – that it was decided in the way in which it was when it should have been decided as a 12b-6 and you would have been entitled to notice? Well, when he concluded that there was no jurisdiction, he didn't consider the issue of privity at all. He basically said, oh, there's no identity of parties, end of story. And it seems to me that that's not the end of the story, because for res judicata purposes, you look not only at whether the parties are the same, but whether they're in privity with one another. Does that answer your question? Yes. If there are no further questions, then. Thank you very much to both sets of counsel. We appreciate your arguments in these very interesting cases. They really are interesting. And we thank you. We will. We will respond to all of your motions. And I'm sure you'll both be delighted. We will – the case of Prometheus Development Company v. Everest Properties is submitted.
judges: Thompson, Smith, Hayes